𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

| | |
|---|---|
| **Cecil Fitzgerald Jamison, #46544,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**Director R. Myers; Captain Refro;** )<br>**Bob Sefers, Kitchen Supervisor** )<br>**Aramark; Lieutenant R. Watson;** )<br>**and Lieutenant Friedley**, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 9:05-3364-RBH-GCK<br><br>**REPORT AND RECOMMENDATION**<br>**OF THE MAGISTRATE JUDGE** |

## I. INTRODUCTION

The *pro se* Plaintiff, Cecil Fitzgerald Jamison ("Plaintiff" or "Jamison"), brought this action pursuant to Title 42, United States Code, Section 1983, alleging that during the time he was detained in Richland County's Alvin S. Glenn Detention Center, he was denied access to kosher meals, in violation of his First Amendment right to practice his religion, and was subjected to cruel and unusual punishment in violation of the Eighth Amendment. He also alleges a Fourteenth Amendment violation of his rights.

This case was automatically referred to the undersigned United States Magistrate Judge for review pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rules 73.02(B)(2)(d) and (e), D.S.C., which authorize such review of pretrial matters in *pro se* prisoner cases filed under 42 U.S.C. § 1983.

One of the above-captioned defendants, Bob Sefers, has filed a Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) or in the alternative for Judgement on the Pleadings pursuant to Rule 12(c), or for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P. [21-1] The defendants R. Myers, Captain Refro, R. Watson and Lieutenant Friedley have filed a motion for

summary judgment. [22-1] Because these are dispositive motions, this Report and Recommendation is entered for review by the District Judge.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim

currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. PROCEDURAL HISTORY

The Plaintiff commenced this Section 1983 action on November 28, 2005[1] against Director R. Myers, Captain Refro, Bob Sefers, Kitchen Supervisor Aramark, Lieutenant R. Watson; and Lt. Friedley, alleging that while he was incarcerated in the ASGDC, he was denied a Kosher diet as required by his religion, "The Hebrew Way of Life." Plaintiff states that he began to receive Kosher meals on October 5, 2005, but alleges that the portions were inadequate and of lesser nutritional value, and that he was subjected to harassment because of his faith by some of the officers at the ASGDC. Plaintiff explains in his Complaint that his "claim is actually about NOT RECEIVING THE PROPER NUTRITIONAL MEALS."[2] Plaintiff further alleges he was forced to drink water instead of juice and that he had to sell his meals to buy canteen items such as Crunch and Munch, honey buns and chips just to keep something in his stomach. Plaintiff seeks damages in the amount of one million dollars.[3]

On December 9, 2005, an Order was issued by this court for the Clerk of Court to issue summonses and forward the complaint and the Forms U.S.M.-285 to the United States Marshall for service of process upon all of the defendants. [4]

On December 29, 2005, the defendant Bob Sefers ("Defendant Sefers"), mis-identified by the Plaintiff as a kitchen supervisor for Aramark, filed an answer to the Complaint, setting forth affirmative defenses pursuant Rules 12(b)(6) and 12(b)(5). [7]

---

[1] Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Complaint. *See* Order [4-1] at p. 1, n.1.

[2] See Plaintiff's Complaint [1-1] at p.3.

[3] *See* Complaint [1-1] at ¶ 3-5.

On January 6, 2006, an answer was filed on behalf of the other defendants, Director R. Myers, Captain Refo, Lieutenant R. Watson; and Lieutenant Friedley.[4]  [10]  (Director R. Myers, Captain Refo, Lieutenant R. Watson; and Lt. Friedley will be referred to collectively as the "Defendant Officers).

Thereafter, Defendant Sefers filed a Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) or in the alternative for Judgment on the Pleadings pursuant to Rule 12(c), or for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P, and a supporting memorandum.  [21-1; 21-2]  The Defendant Officers also filed a motion for summary judgment and a supporting memorandum.  [22-1; 22-2]

On March 7, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Motions.  [24]  The Plaintiff did not respond; consequently, the undersigned issued an Order on April 12, 2006 granting the Plaintiff an additional twenty (20) days to respond and advising him that if he failed to respond, his action would be dismissed pursuant to Fed.R.Civ. P. 41(b).  [26]  On April 26, 2006, Plaintiff filed a "Motion to Object to Dismissal".  [27]  Subsequently, on May 1, 2006, Plaintiff filed a motion to amend his complaint to add two defendants, and for an injunction which would prevent officers at the ASGDC from "taunting" Plaintiff because he requested Kosher meals. [29]  This motion was denied by an Order filed on May 3, 2006 on the grounds that Plaintiff had failed to attach a copy of the proposed amended complaint to explain to the court the reason such amendment should be allowed, and the Court held that the defendants would suffer undue prejudice if the complaint were amended at that time.  Furthermore, the court denied the request for injunctive relief.  [31]

---

[4]  Plaintiff mis-identified Captain Refo as "Captain Refro" in his complaint.  The correct spelling of Captain Refo's name will be used herein.

On May 5, the Defendant Sefers filed a reply to Plaintiff's response, alleging that Plaintiff had failed to properly serve Defendant Sefers, and that Plaintiff had failed to produce any evidence in opposition to Defendant Sefers' motion to dismiss, for judgment on the pleadings, or in the alternative for summary judgment. [32]

Thereafter, on July 26, 2006, Plaintiff telephoned the Clerk of Court's office to state that he had been released from the ASGDC. He provided the Clerk of Court with his new address, and was instructed to send the address change in writing. Plaintiff failed to follow these instructions. On September 7, 2006, the Defendant Officers provided the court with the Affidavit of Lt. Christopher Montjoy [34], which stated that Plaintiff was not currently incarcerated at the ASGDC. Accordingly, as Plaintiff is no longer incarcerated at the ASGDC, any claims he has set forth for injunctive relief have been rendered moot by his release.

## IV.  THE STANDARD FOR DETERMINING A MOTION PURSUANT TO 12(b)(5)

First, Defendant Sefers contends that this action should be dismissed against him pursuant to Rule 12(b)(5) he was not properly served. Plaintiff served this suit against Defendant Sefers at the ASGDC, by certified mail. The certified mail receipt was signed by a person at the ASGDC.   However, Defendant Seders is a resident of Rock Hill, South Carolina. Plaintiff did not serve Sefers at his home pursuant to F.R.C.P. Rule 4(d)(1) or by certified mail in compliance with F.R.C.P. Rule 4(d)(8).

Federal Rule of Civil Procedure 4(d)(1) requires that a person sued in his individual capacity can only be served at his home, or if not at home through a person appointed to accept service on his behalf. Federal Rule of Civil Procedure 4(d)(8) provides for service of process by certified mail, however this service must be accomplished in compliance with Rule 4(d)(1). It is undisputed that Plaintiff did not serve Defendant at his home in Rock Hill, or through his

appointed agent for service of process.[5]  Defendant is therefore entitled to a dismissal of the Complaint pursuant to Rule 12(b)(5) because of insufficiency of service of process.

## V.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

The determination of the Motion for summary judgment filed by the Defendant Officers is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'"  *Miltier*, 896 F.2d at 852, *quoting Celotex v. Catrett*, 477 U.S. 317, 328 (1986) (White J., concurring).

---

[5]     *See* Affidavit of Bob Sefers attached as [21-4] at p. 5, ¶ 17.

For purposes of evaluating the appropriateness of summary judgment, this court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

When, as in the present case, the Defendant Officers are the moving party, and the Plaintiff has the ultimate burden of proof on an issue, the Defendant Officers must identify the parts of the record that demonstrate the Plaintiff lacks sufficient evidence.  The nonmoving party, then, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## VI.  APPLICATION OF THE PRISON LITIGATION REFORM ACT

As a threshold matter, the court finds that this case could be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing suit.  The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a Section 1983 action.  42 U.S.C. § 1997e(a).  It is clear to the undersigned that Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit and thus this suit must be dismissed.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  The PLRA provides in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). In *Porter*, the United States Supreme Court held that "exhaustion in cases covered by 1997e(a) is now mandatory." 534 U.S. at 524. The Court noted that a district court has no discretion, as had existed prior to the PLRA, to determine whether administrative remedies needed to be exhausted in a particular case. The Court further stated that '[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id*. The Court stressed, as does the statute, that exhaustion must take place prior to the commencement of the civil action.

The courts of this District are in accord. For instance, in *Fair v. Hallman*, 2006 WL 1172198 (D.S.C. 2006), this Court explained that "[a]s a threshold matter, the court must address whether Plaintiff has exhausted the available administrative remedies prior to filing suit." Similarly, in *Husband v. Lovett*, 2006 WL 1207847 (D.S.C. 2006), this Court held that "exhaustion of administrative remedies prior to filing suit is required by 42 U.S.C. § 1997e(a)."

As explained in *Porter*, administrative remedies must be exhausted prior to the filing of a civil action in order to further the efficient administration of justice:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, *Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.* In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524-525 (emphasis added). Thus, it is clear from the *Porter* opinion that administrative remedies must be exhausted prior to the filing and pursuit of a Section 1983 action. *See e.g., Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674 (4th Cir. 2005).

The ASGDCl has a grievance policy and procedure where inmates may file written grievances regarding the facility or any other topic of concern.[6] These grievances are processed by Defendant Friedley and routed to the most appropriate facility personnel to respond to the complaint.[7] The response to the grievance is routed back through Defendant Friedley. Inmates are notified of the response by receipt of a photocopy of the original grievance. They are then able to appeal the grievance response through the chain of command.[8]

In this case, Plaintiff filed a number of grievances during his period of incarceration at issue, in October, 2005. Several of these grievances have addressed the way in which his meals were delivered, the temperature at which they were delivered, and the contents of the meals (*e.g*. Plaintiff received Italian style dressing instead of receiving the Thousand Island dressing he preferred). However, Plaintiff's grievances do not specifically address the allegations of the instant Complaint regarding receipt of inadequate portions. As such, the record shows no evidence that he has grieved the particular issue contained within his Complaint.

Furthermore, were Plaintiff able to demonstrate that he grieved the particular complaint at issue in this litigation, or the court were to liberally construe these grievances to that effect, Plaintiff's Complaint must still be dismissed. The PLRA, as interpreted by *Porter*, requires that the administrative remedies be fully exhausted. In this case, Plaintiff has failed to fully exhaust his administrative remedies as he has not fully appealed the initial grievance responses through the chain of command.[9] Therefore, there is a grievance system at the ASGDC, but Plaintiff has

---

[6] *See* Friedley Affidavit.

[7] *Id.*

[8] *Id.*

[9] *See* Myers and Friedley Affidavits.

failed both to grieve the particular issue contained within his Complaint and failed to fully exhaust the appeals process, Plaintiff's suit must be dismissed pursuant to the PLRA.

Even thought this court finds that Plaintiff's suit should be dismissed for failure to exhaust the administrative grievance procedure, the court nonetheless will address the merits of Plaintiff's case.

### VII.  WHETHER PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER SECTION 1983

Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Accordingly, as required by statute, Plaintiff must meet two requirements to bring suit under Section 1983. First, he must show that the defendants deprived Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States.

Plaintiff alleges that his meals are inadequate and that this inadequacy has impermissibly violated both his First and Fourteenth Amendment rights.  However, the affidavits of Defendants Myers, Refo, Watson, and Friedley clearly demonstrate that they are not involved in the preparation of Plaintiff's meals nor in the formulation of inmate menus.  "It is well-settled that '[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.' " *Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir. 1991) (unpublished), *quoting Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985).  However, Plaintiff's Complaint demonstrates no evidence of personal involvement on the part of these Defendants.  The affidavits of Defendants Myers, Refo, Watson,

and Friedley clearly demonstrate that they do not prepare inmate meals and that they are not involved in formulating the menus.  An outside contractor prepares these items and a professional dietician formulates the menus using dietary standards and guidelines applicable to feeding the inmate population as a whole.

It is also clearly established that Plaintiff may not allege a constitutional cause of action against these Defendants to recover damages for the unconstitutional acts of the other employees of Richland County.  The United States Supreme Court has clearly held that a governmental entity may not be held liable for the acts of its employees under a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)("municipalities are not liable under *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship.").  Plaintiff cannot impose vicarious liability on the Defendant Officers for alleged acts and omissions without any demonstration of personnel involvement in the alleged deprivations.  The Plaintiff's allegations, therefore, are contrary to *Monell.*

Plaintiff has also failed to establish that there was a policy or custom that caused his alleged injury.  Therefore, he has not established supervisory liability against these Defendants. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).  Furthermore, *respondeat superior* is not a cognizable foundation for recovery pursuant to 42 U.S.C. § 1983.  Therefore, Plaintiff's claims against these Defendant Officers, in their individual capacities, must be dismissed.

### VII.  WHETHER THE DEFENDANT OFFICERS PLAINTIFF HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER THE EIGHTH OR FOURTEENTH AMENDMENTS

Plaintiff's Complaint alleges that he was subjected to cruel and unusual punishment because he was not provided juice with his Kosher meals, he did not have adequate meals, and he had to sell his meals for canteen items.

Claims related to conditions of confinement for pretrial detainees are analyzed pursuant to the Fourteenth Amendment utilizing the same analysis for claims brought pursuant to the Eighth Amendment. In order to establish cruel and unusual punishment under the Eighth Amendment, an inmate must establish that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (citations omitted). The United States Supreme Court has determined that only extreme deprivations are sufficient to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *Hudson v. McMillian*, 503 U.S. 1 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler*, 989 F.2d at 1381. In the alternative, the inmate must show a substantial risk of such serious harm resulting from his exposure to the challenged conditions. *See De'Lonta v. Angelone*, 2003 WL 21213672 (4th Cir. 2003)(citations omitted).

Showing deliberate indifference by prison officials satisfies the subjective component of an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825 (1994). Deliberate indifference requires a showing that a prison official actually knew of and disregarded an objectively serious condition, medical need, or risk of harm. *De'Lonta v. Angelone*, 2003 WL 21213672 (4th Cir. 2003). However, a prison official "who actually [knows] of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted."[10] *Farmer*, 511 U.S. at 844. The Farmer Court went on to note that, "[w]hether one puts it in terms of duty or deliberate indifference, prison

---

[10] Significantly, negligence is not a proper foundation for a claim brought pursuant to the United States Constitution. *Daniels v. Williams*, 748 F.2d 229 (4th Cir. 1984).

officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*.

The Fourth Circuit has examined at least two cases similar to Plaintiff's claims regarding receipt of religious based meals. In *Leonard v. Murray*, 843 F.2d 1387, 1988 WL 30716 (4th Cir. 1988) (Table), an inmate claimed that the kosher menu lacked sufficient variety. The *Leonard* Court affirmed the jury verdict in favor of the defendants and stated that "[e]ven though the kosher menus do appear to be more repetitive than those prepared for the general population, this lack of variety does not impermissibly impede the inmates' practice of their religion." Id. at 1.

The Fourth Circuit again reviewed the issue of a kosher meal plan within the prison setting in *Cooper v. Lanham*, 145 F.3d 1323, 1998 WL 230913 (4th Cir. 1998) (Table). In *Cooper*, the Court was called to examine the question of whether a religion-specific diet was even required within the detention setting. The *Cooper* court utilized the four-prong analysis set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), to find that the Maryland Department of Corrections could refuse to provide religion-specific meals where the refusal was rationally related to a legitimate penalogical interest.

In the present case, Plaintiff has failed to demonstrate that he has suffered any constitutional deprivation. Plaintiff complains that he is forced to drink water and that he is unable to drink the juice and milk provided to him. However, water is a safe and effective method of hydration. This court does not believe that Plaintiff has a constitutional right to receive the particular juice or beverage of his choice while incarcerated.

Furthermore, the record clearly demonstrates that Plaintiff is complaining that he has not received enough food while incarcerated. However, Plaintiff can offer no evidence that, even if

true, he has suffered any injury as a result of this alleged deficiency.[11]  Furthermore, except for Plaintiff's own statement that he has lost 54 pounds, and "suffers severe headaches" [27] Plaintiff has offered no concrete evidence that he is suffering from weight loss or any nutrition-related injury.  The medical records contained in Exhibit A clearly show that Plaintiff's *only* complaint to the ASGDC's medical staff has been for a foot fungus–Plaintiff has never complained of weight loss or severe headaches.  In addition, the records indicate that Plaintiff has never complained to the medical staff that the meals he received were nutritionally inadequate.  Therefore, Plaintiff cannot satisfy the objective prong to demonstrate any constitutional deprivation.

Plaintiff likewise cannot demonstrate any evidence that these Defendants have consciously disregarded a risk of serious harm to Plaintiff.  The record shows that while these Defendants had some knowledge of Plaintiff's complaints regarding his meals, they all reasonably relied on the fact that Plaintiff's menu was being set by a professional dietician.  They have testified that they believed that Plaintiff was receiving appropriate and nutritious meals.  Therefore, Plaintiff has failed to offer any evidence of any actual injury necessary to show a constitutional deprivation.

Moreover, there is no evidence to demonstrate that these Defendants knew of, and consciously disregarded, a risk of serious harm to Plaintiff.  As such, Plaintiff fails to state a cause of action for any deprivation of his Eighth or Fourteenth Amendment rights and the Defendant Officers are entitled to summary judgment.

---

[11] The Defendant Officers deny that Plaintiff received an inadequate amount of food while incarcerated at the ASGDC and note that the record clearly reflects the fact that the menu is compiled by a professional dietician to satisfy the nutritional needs of the inmates.

## IX.  WHETHER THE DEFENDANT OFFICERS PLAINTIFF HAVE VIOLATED PLAINTIFF'S RIGHTS UNDER THE FIRST AMENDMENT

Plaintiff states in his Complaint that he is suing the Defendant Officers because he is not receiving an adequate quantity of food, *not* because he is not receiving kosher meals.  In fact, after Plaintiff requested Kosher meals, those meals were provided to him.  Therefore, Plaintiff has admitted that he is receiving the religion-specific meals he requested.  Even were Plaintiff to have averred that he was not receiving the meals, the record clearly demonstrates that Plaintiff has been receiving kosher meals.[12]  It is unclear from Plaintiff's Complaint what actions of these Defendants have violated his First Amendment rights.  It is also unclear whether Plaintiff claims a violation of the establishment clause or the free exercise clause of the First Amendment.

Construed liberally, it would appear that Plaintiff's claims are made pursuant to the Free Exercise clause of the First Amendment where he acknowledge receipt of kosher meals but alleges that he did not receive adequate portions.  Regardless, the analysis is substantially similar.  "The Supreme Court held in *Smith* that a neutral, generally applicable law does not offend the free exercise clause, even if the law has an incidental effect on religious practice." *Hines v. S.C.D.C.*, 148 F.3d 353, 357 (4th Cir. 1998) *citing Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).  The *Hines* Court defined a religiously neutral law as one that "proscribes conduct without regard to whether that conduct is religiously motivated or not. If the law makes no distinction between action based on religious conviction and action based on secular views, it is a generally applicable law, neutral toward religion and not violative of the First Amendment" *Hines*, at 357.  A neutral and uniform application of prison rules and regulations that have an incidental effect on religious practices does not violate the First Amendment.  *Woods v. Evatt*, 876 F.Supp. 756 (D.S.C. 1995).

---

[12]     *See* Watson Affidavit, Sefers Affidavit, and Myers Affidavit, attached as [21-4 and 21-5]

In the present case, the record clearly demonstrates that Plaintiff was being provided with kosher meals, as he requested, during the time he was incarcerated. The record also demonstrates that he was being provided with meals created by a professional dietician based on nutritional guidelines applicable to the facility as a whole, rather than on his particular religious beliefs.[13] There is no evidence that the portions are reduced because of Plaintiff's requested kosher meals. Therefore, Plaintiff fails to show that the Defendant Officers have impermissibly violated his exercise of his religious beliefs. Therefore, it is recommended that the Defendant Officers be granted summary judgment on Plaintiff's claims.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Defendant Sefers' **Motion to Dismiss [21-1] be granted.** It further is recommended that the Defendant Officers' **Motion for Summary Judgment [22-1] be granted.**

*[signature]*
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

November 21, 2006

Charleston, South Carolina

---

[13] *See* Sefers Affidavit, Myers Affidavit, and Watson Affidavit.

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the**

> **[magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \* \* \* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \* \* \* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**